# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DANIEL RODRIGUEZ<br>495 N. Pennsylvania Avenue<br>Wilkes-Barre, PA 18702<br><br>    Plaintiff,<br><br>v.<br><br>THE LION BREWERY, INC.<br>700 N. Pennsylvania Avenue<br>Wilkes-Barre, PA 18705<br><br>    Defendant. | CIVIL ACTION<br><br>NO.: _____<br><br><br><br>**JURY TRIAL DEMANDED** |

## CIVIL ACTION COMPLAINT

Daniel Rodriguez (*hereinafter* referred to as "Plaintiff," unless indicated otherwise) by and through his undersigned counsel, hereby avers as follows:

### INTRODUCTION

1. Plaintiff has initiated this action to redress violations by the Lion Brewery, Inc. (*hereinafter* referred to as "Defendant") of the Americans with Disabilities Act, as amended ("ADA" – 42 U.S.C. §§ 12101 *et. seq.*), the Family and Medical Leave Act ("FMLA" - 29 U.S.C. §§ 2601 *et. seq.*), and the Pennsylvania Human Relations Act ("PHRA").[1] As a direct consequence of Defendant's unlawful actions, Plaintiff seeks damages as set forth herein.

---

[1] Plaintiff's claims under the PHRA are referenced herein for notice purposes. He is required to wait 1 full year before initiating a lawsuit from date of dual-filing with the EEOC. Plaintiff must however file his lawsuit in advance of same because of the date of issuance of his federal right right-to-sue letter under the ADA. Plaintiff's PHRA claims however will mirror identically his federal claims under the ADA.

## JURISDICTION AND VENUE

2. This Court has original subject matter jurisdiction over the instant action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4) because it arises under the laws of the United States and seeks redress for violations of federal laws.

3. This Court may properly assert personal jurisdiction over Defendant because its contacts with this state and this judicial district are sufficient for the exercise of jurisdiction over Defendant to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in *Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1945), and its progeny.

4. Pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2), venue is properly laid in this district because Defendant is deemed to reside where it is subjected to personal jurisdiction, rendering Defendant a resident of the Middle District of Pennsylvania.

5. Plaintiff is proceeding herein (in part) under the ADA after properly exhausting all administrative remedies with respect to such claims by timely filing a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and by filing the instant lawsuit within ninety ("90") days of receiving a notice of dismissal and/or right to sue letter from the EEOC.

## PARTIES

6. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

7. Plaintiff is an adult individual with an address as set forth in the caption.

8. The Lion Brewery, Inc. produces and sells beer to consumers in the Northeast Region of the United States, with an address as set forth in the caption.

9. At all times relevant herein, Defendant acted by and through its agents, servants and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for the Defendant.

## FACTUAL BACKGROUND

10. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

11. Plaintiff was employed with Defendant as a Machine Operator for approximately 7 years until his unlawful termination (as discussed *infra*) on or about March 20, 2019.

12. At all relevant times during his employment with Defendant, Plaintiff was supervised by Production Supervisor, Ryan Fletcher (*hereinafter* "Fletcher").

13. During his tenure with Defendant, Plaintiff was a hard-working employee who performed his job well.

14. At all relevant times during Plaintiff's employment with Defendant, Plaintiff suffered from and continues to suffer from debilitating migraines (in addition to other complications) arising from a brain infection that occurred in or about 2016.

15. As a result of his aforesaid health conditions, Plaintiff experiences severe head and neck pain, light and sound sensitivity, and nausea, which (at times) limits his ability to perform some daily life activities, including but not limited to turning his neck and head, focusing, and working (among other daily life activities).

16. Despite his aforesaid health conditions and limitations, Plaintiff was able to perform the duties of his job well with Defendant; however, Plaintiff did require some reasonable medical accommodations at times (discussed further *infra*).

17. Plaintiff apprised Defendant's management, including but not limited to Fletcher and Human Resources Director, Theresa Mandzak (*hereinafter* "Mandzak") of his aforesaid disabilities and need for medical accommodations on several occasions throughout and up until the end of his employment with Defendant. For example, but not intended to be an exhaustive list:

   a. From in or about 2017 until his termination on or about March 20, 2019, Plaintiff requested and utilized intermittent medical leave under the Family and Medical Leave Act ("FMLA") for doctors' appointments and to treat and care for his serious health conditions; and

   b. From in or about 2017 until his termination on or about March 20, 2019, Plaintiff informed Defendant's management that he needed periodic breaks while working to alleviate pain during a migraine occurrence.

18. Shortly after Plaintiff apprised Defendant's management of his serious health conditions and his need for accommodations, Plaintiff was subjected to multiple forms of animosity and hostility by Defendant's management. By way of example, but not intended to be an exhaustive list:

   a. Fletcher overly scrutinized and criticized Plaintiff's work;

   b. Fletcher increasingly treated Plaintiff in a rude and demeaning manner;

   c. Fletcher and Plant Manager, Karen Brownell (*hereinafter* "Brownell") harassed Plaintiff and attempted to dissuade him from taking time off to care for his serious health conditions by disciplining and/or suspending him for requesting/utilizing FMLA leave.[2] For example, in or about July of 2018, Plaintiff was suspended

---

[2] To further establish Defendant's pattern of discriminatory harassment and retaliation to those individuals with health conditions requiring accommodations, upon Plaintiff's information and belief, other employees were assessed disciplinary points for absenteeism for utilizing FMLA-qualifying or approved leave.

4

without pay for four days immediately after taking one day of intermittent leave to care for and treat a migraine, which made Plaintiff concerned about retaining his job if he continued to take time off;

d. Whenever Plaintiff attempted to request or take time off for his serious health conditions, Defendant's management groaned or rolled their eyes (as if Plaintiff was exaggerating his need); and

e. Whenever Plaintiff requested brief breaks to alleviate his migraines (a reasonable accommodation under the ADA), Defendant's management would hostilely advise Plaintiff "if you can't handle it, just go home"; however, Plaintiff would stay and work through his migraine pain for fear of being terminated.

19. Plaintiff objected to the aforesaid discriminatory mistreatment that he was being subjected to and complained to Mandzak and Brownell that he believed he had been disciplined and/or suspended in or about July of 2018 for utilizing his intermittent FMLA leave to care for his aforesaid serious health conditions.

20. Instead of investigating Plaintiff's aforesaid claims of disability discrimination and retaliation, Mandzak and Brownell simply rolled their eyes, and Defendant's management continued to subject Plaintiff to animosity and hostility as a result of his serious health conditions and requests for reasonable accommodations.

21. On or about March 14, 2019, Plaintiff suffered a serious work-related injury to his head and neck while operating a palletizer jack, compressing his neck and causing a severe concussion.

22. Plaintiff's March 14, 2019 serious work-related injury was witnessed by several members of Defendant's management, including but not limited to Fletcher, who briefly inquired

if Plaintiff was "ok," but then immediately went back to work. Upon Plaintiff's information and belief, Fletcher did not report or document Plaintiff's work-related injury.

23. Plaintiff continued to work for approximately a ½ hour after his serious work-related injury on or about March 14, 2019, until he began to feel severe neck and head pain and dizziness, at which time he took his normal work break but apparently became unconscious for several hours in his vehicle.

24. Shortly after Plaintiff awoke from being unconscious in his vehicle as a result of his serious work-related head/neck injury, he entered Defendant's facility and was immediately informed by Fletcher that he was being sent home and suspended without pay for sleeping in his vehicle, pending an investigation.

25. In response to Fletcher informing him that he was being suspended without pay for sleeping in his vehicle on or about March 14, 2019, Plaintiff informed Fletcher that he must have fallen asleep as a result of the pain and dizziness from his aforesaid work-related injuries/serious health conditions, but Fletcher ignored his explanation.

26. Plaintiff's aforesaid work-related injuries/serious health conditions caused Plaintiff severe pain and dizziness which exacerbated his current disabilities (causing additional migraine problems), limiting Plaintiff's ability (at times) to perform some daily life activities, including but not limited to turning his neck and head, focusing, and working (among other daily life activities).

27. Despite his aforementioned work-related injuries/serious health conditions and limitations, Plaintiff was still able to perform the essential duties of his job well with Defendant; however, Plaintiff did require reasonable medical accommodations at times (discussed further *infra*).

28. For example, shortly after suffering his aforesaid work-related injury, Plaintiff sought treatment at a hospital emergency room, wherein he was diagnosed by the hospital physician with a concussion and neck trauma/compression, given pain and anti-inflammatory medication, and advised to rest his injuries.

29. On or about March 18, 2019, Plaintiff contacted Mandzak and informed her that he had suffered a work-related injury on or about March 14, 2019, and that he had been evaluated by a hospital physician.

30. In response to Plaintiff informing Mandzak of his work-related injury and subsequent treatment by a hospital physician, Mandzak hostilely replied "well that's convenient," insinuating that Plaintiff was falsifying a worker's compensation claim, even though Fletcher and other members of Defendant's management had witnessed Plaintiff's work-related injury on or about March 14, 2019.

31. Mandzak informed Plaintiff that he would need to file for worker's compensation benefits through Defendant and directed Plaintiff to seek treatment with Defendant's worker's compensation carrier physicians at Concentra.

32. Shortly thereafter, Plaintiff was evaluated by Defendant's worker's compensation carrier physician at Concentra, who confirmed that Plaintiff had suffered a concussion and neck trauma/compression as a result of his aforesaid work-related injury on or about March 14, 2019, and recommended that Plaintiff be on bedrest until he could be reevaluated a week later.

33. Following his visit to Concentra (discussed *supra*), Plaintiff immediately informed Mandzak of the seriousness of his work-related injuries/serious health conditions and provided Mandzak with all of his hospital and Concentra paperwork, including the physician's recommendation for bedrest until he could be reevaluated a week later.

34. On or about March 20, 2019, **only two days** after putting Defendant on notice of his reasonable medical accommodations, i.e. time off for bedrest until he could be reevaluated in one week by Defendant's worker's compensation physician, Plaintiff was informed by Mandzak and Brownell via phone and follow-up correspondence that he was being terminated for sleeping in his car.

35. Plaintiff believes and therefore avers that he was suspended without pay and ultimately terminated by Defendant due to (1) his known and/or perceived disabilities, (2) his record of impairment; (3) in retaliation for expressing concerns of unfair treatment as a result of his disability; and/or (4) requesting reasonable accommodations.

## COUNT I
### Violations of the Americans with Disabilities Act, as Amended ("ADA")
([1] Actual/Perceived/Record of Disability Discrimination; [2] Retaliation; [3] Hostile Work Environment; and [4] Failure to Accommodate)

36. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

37. Plaintiff suffered from qualifying health conditions under the ADA which affected his ability (at times) to perform some daily life activities including, but not limited to turning his neck and head, focusing, and working.

38. Plaintiff requested reasonable accommodations from Defendant, including but not limited to intermittent and block time off from work and periodic breaks to care for and treat for his work-related injuries/serious health conditions.

39. Plaintiff kept Defendant's management informed of his work-related injuries/serious medical conditions and need for medical treatment and other accommodations.

40. Plaintiff was subjected to hostility and animosity due to his health and/or requests for accommodations through demeaning and/or discriminatory treatment towards him.

41. Defendant failed to properly accommodate Plaintiff by disciplining and/or suspending Plaintiff for ADA-related absences pertaining to his aforesaid health conditions and failing to provide him with periodic breaks to rest during migraine occurrences.

42. Plaintiff complained to Defendant's management that he believed the negative treatment he was receiving constituted disability discrimination and retaliation for his requests for accommodations.

43. Plaintiff was terminated shortly after taking leave and requesting accommodations.

44. Plaintiff believes and avers that he was subjected to a hostile work environment because of: (1) his known and/or perceived health problems; (2) his record of impairment; (3) his requested accommodations; and/or (4) expressed concerns of unfair treatment as a result of his disability.

45. Plaintiff believes and avers that he was subjected to pretextual discipline and/or suspended in or about July of 2018 because of: (1) his known and/or perceived health problems; (2) his record of impairment; (3) his requested accommodations; and (4) expressed concerns of unfair treatment as a result of his disability.

46. Plaintiff believes and avers that he was suspended on or about March 14, 2019 and ultimately terminated by Defendant due to (1) his known and/or perceived disabilities; (2) his record of impairment; (3) his requested accommodations; and/or (4) expressed concerns of unfair treatment as a result of his disability.

47. These actions as aforesaid constitute violations of the ADA.

## COUNT II
## Violations of the Family and Medical Leave Act ("FMLA")
### (Retaliation & Interference)

48. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

49. Plaintiff was an eligible employee under the definitional terms of the FMLA, 29 U.S.C. § 2611(a)(i)(ii).

50. Plaintiff requested leave for medical reasons from Defendant, his employer, with whom he had been employed for at least twelve months pursuant to the requirements of 29 U.S.C.A § 2611(2)(i).

51. Plaintiff had at least 1,250 hours of service with Defendant during his last full year of employment.

52. Defendant is engaged in an industry affecting commerce and employs fifty (50) or more employees for each working day during each of the twenty (20) or more calendar work weeks in the current or proceeding calendar year, pursuant to 29 U.S.C.A § 2611(4)(A)(i).

53. Plaintiff was entitled to receive leave pursuant to 29 U.S.C.A § 2612 (a)(1) for a total of twelve (12) work weeks of leave on a block or intermittent basis.

54. Plaintiff was suspended (on two separate occasions) and ultimately terminated in close proximity to his requests for intermittent and block FMLA leave.

55. Any time that Plaintiff took intermittent leave between March 14, 2019 and his termination on or about March 20, 2019, would have been considered FMLA-qualifying leave.

56. Furthermore, Plaintiff's need for time off after his work-related injury would have been FMLA qualifying leave as well.

57. Defendant committed interference and retaliation violations of the FMLA by: (1) suspending and terminating Plaintiff for requesting and/or exercising his FMLA rights and/or for taking FMLA-qualifying leave; (2) by considering Plaintiff's FMLA leave needs in making the decision to suspend and terminate him; (3) suspending and terminating Plaintiff to intimidate him and/or prevent him from taking FMLA-qualifying leave in the future; and/or (4) by making negative comments and/or taking actions towards him that would dissuade a reasonable person from exercising his rights under the FMLA.

**WHEREFORE**, Plaintiff prays that this Court enter an Order providing that:

A. Defendant is to promulgate and adhere to a policy prohibiting discrimination and retaliation in the future against any employee(s);

B. Defendant is to compensate Plaintiff, reimburse Plaintiff, and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendant's illegal actions, including but not limited to back pay, front pay, salary, pay increases, bonuses, insurance, benefits, training, promotions, reinstatement and seniority;

C. Plaintiff is to be awarded liquidated and/or punitive damages, as permitted by applicable law, in an amount believed by the Court or trier of fact to be appropriate to punish Defendant for its willful, deliberate, malicious and outrageous conduct and to deter Defendant or other employers from engaging in such misconduct in the future;

D. Plaintiff is to be accorded other equitable and legal relief as the Court deems just, proper and appropriate (including but not limited to damages for emotional distress, pain, suffering and humiliation); and

E. Plaintiff is to be awarded the costs and expenses of this action and reasonable attorney's fees as provided by applicable federal and state law.

                      Respectfully submitted,

                      **KARPF, KARPF & CERUTTI, P.C.**

By: _____
                      Ari R. Karpf, Esq.
                      3331 Street Rd.
                      Two Greenwood Square, Suite 128
                      Bensalem, PA 19020
                      (215) 639-0801

Dated: April 22, 2019